# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRITTON LYNN KANNADY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF KIOWA, an Oklahoma municipal )<br>corporation; JIMMIE W. BROWN, in his )<br>official and individual capacity; DANNY L. )<br>DRAKE, in his official and individual )<br>capacity; SHERRY G. STONE, in her )<br>official and individual capacity; JAMES V. )<br>RYAN, in his official and individual )<br>capacity; FREDDIE ADAMS, in his official )<br>and individual capacity; CITY OF )<br>McALESTER, an Oklahoma municipal )<br>corporation; and CITY OF KREBS, an )<br>Oklahoma municipal corporation, )<br>)<br>Defendants, )<br>and )<br>)<br>STATE OF OKLAHOMA, ex rel. W.A. )<br>Drew Edmondson, Attorney General, )<br>)<br>Intervenor. ) | Case No. CIV-05-476-SPS |

## OPINION AND ORDER GRANTING SUMMARY
## JUDGMENT TO THE CITY OF MCALESTER AND THE
## CITY OF KREBS ON THE PLAINTIFF'S CLAIMS

In this action, the Plaintiff Britton Lynn Kannady sued a former employer, the Defendant City of Kiowa and the individual members of its city council, the Defendants Jimmie Brown, Danny Drake, Sherry Stone, James Ryan, and Freddie Adams (the "Kiowa Defendants"), and two prospective employers that refused to hire him, the Defendant City of McAlester and the Defendant City of Krebs. The jurisdictional claims arise under the Age

Discrimination in Employment Act of 1967, 29 U.S.C. § 621 - § 624 ( the "ADEA") and are asserted against the City of McAlester and the City of Krebs, both of which refused to hire the Plaintiff as a police officer because he was too old to enter the Oklahoma Police Pension and Retirement System ("OPPRS"), 11 Okla. Stat. § 50-101- § 50-136.6.[1] The remaining claims in this action arise under Oklahoma state law, *i. e.*, claims against the City of McAlester and the City of Krebs for intentional infliction of severe emotional distress, and claims against the Kiowa Defendants for wrongful discharge, tortious interference with employment, blacklisting, slander *per se* and intentional infliction of severe emotional distress. The Plaintiff, the City of McAlester and the City of Krebs filed cross-motions for summary judgment on the federal claims. In addition, the City of McAlester filed a motion for summary judgment on the Plaintiff's state law claim for intentional infliction of severe emotional distress.[2] For the reasons set forth herein, the Court finds that the City of McAlester and the City of Krebs are entitled to summary judgment on the Plaintiff's claims.

---

[1] The Plaintiff also asserted equal protection claims against the City of McAlester and the City of Krebs pursuant to 42 U.S.C. § 1983 but subsequently dismissed them. *See* Docket No. 84. Such claims were in any event preempted by the ADEA to the extent they arose out of age-based employment discrimination. *See Migneault v. Peck,* 158 F.3d 1131, 1140 (10th Cir. 1998), *vacated on other grounds sub nom. Board of Regents of University of New Mexico v. Migneault,* 528 U.S. 1110 (2000). *But see Holmes v. Regents of University of Colorado,* 176 F.3d 488, 1999 WL 285826, at *8 (10th Cir. May 7, 1999) ("Generally speaking, instances of race discrimination *and possibly age discrimination* may violate the Fourteenth Amendment right to equal protection of the laws and trigger a § 1983 claim.") [unpublished opinion; emphasis added], *citing Buckley v. Coyle Public School System,* 476 F.2d 92, 97 (10th Cir. 1973).

[2] The Kiowa Defendants also seek summary judgment. *See* Docket Nos. 98 & 99. Because the Court has elected to dismiss the Plaintiff's claims against the Kiowa Defendants pursuant to 28 U.S.C. § 1367(c)(3) in an order entered contemporaneously herewith, their summary judgment motions are moot.

## I. The Law Applicable To Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and the evidence must be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

## II. Analysis

It is undisputed that under Oklahoma law, all police officers must participate in the OPPRS and may not be "more than forty-five (45) years of age when accepted for membership in the System." 11 Okla. Stat. § 50-112. It is also undisputed that both the City of McAlester and the City of Krebs refused to hire the Plaintiff as a police officer because he was over the age of forty-five based on this provision. The pertinent question is thus whether either of these refusals violated the ADEA. The Plaintiff contends that Section 50-112 violates the ADEA because it requires discrimination on the basis of age. The Defendants (and the Intervenor, the State of Oklahoma) contend, on the other hand, that the

mandatory hiring age contained in Section 50-112 falls within the well-established "law enforcement exception" to the ADEA. *See* 29 U.S.C. § 623(j).[3]

Enacted in 1967, the ADEA initially forbade age discrimination by private employers only. Congress amended the ADEA's definition of "employer" in 1974, thereby making the statute applicable to the states and their subdivisions and putting it at odds with the mandatory age requirements imposed by many state and local law enforcement agencies. *See, e. g., EEOC v. Wyoming,* 460 U.S. 226, 235 (1983) (reversing the district court's decision that the ADEA violated the Tenth Amendment "at least insofar as it regulated Wyoming's employment relationship with its game wardens and other law enforcement officials."). Congress created a "law enforcement exception" in 1986, exempting from the

---

[3] The Plaintiff argues for summary judgment within the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *i. e.*, he contends that he has established a *prima facie* case of age discrimination, and that the Defendants must now show non-discriminatory reasons for refusing to hire him. This presents a neat trap for the Defendants, since there is no dispute they refused to hire the Plaintiff because he was over forty-five years old. But the Plaintiff is wrong in this regard. For example, it is well-established that the *McDonnell Douglas* burden shifting procedure does not apply where there is direct proof of age discrimination, *see Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121-22 (1985), *citing Teamsters v. United States,* 431 U.S. 324, 358, n. 44 (1977), and there clearly *is* such proof here. Further, if the law enforcement exception to the ADEA *does* apply, the substantive provisions of the ADEA and the burden-shifting they would normally entail do not. *See Kopec v. City of Elmhurst,* 193 F.3d 894, 899 n.4 (7th Cir. 1999) ("The defendants argued alternatively that Kopec could not establish a prima facie case of age discrimination and, assuming that he could, that they had legitimate, nondiscriminatory reasons for declining to hire him. The district court did not reach these arguments because it agreed that the ADEA did not apply."). Indeed, it is the Plaintiff's burden to prove, *inter alia*, that the OPPRS is a subterfuge to avoid the substantive provisions of the ADEA. *See, e. g., Feldman v. Nassau County*, 434 F.3d 177, 184 (2d Cir. 2006) ("Plaintiff bears the burden of establishing that a particular hiring plan is a subterfuge under section [623(j)(2)]."), *citing Minch v. City of Chicago*, 363 F.3d 615, 627-28 (7th Cir.), *cert. denied*, 543 U.S. 876 (2004) (discussing that Congress used language allocating the burden of proving subterfuge to the employer for benefit plans under § 623(f)(2), but the language was not included in the law enforcement exception in § 623(j)(2), placing the burden for subterfuge on the plaintiff).

ADEA's coverage mandatory age requirements for law enforcement personnel or firefighters in place at the time of the Supreme Court's decison in *EEOC v. Wyoming*. This was intended to be temporary, *i. e.*, the legislation contained a sunset provision by which the law enforcement exception expired in 1993. *See Feldman v. Nassau County*, 434 F.3d 177, 180-82 (2d Cir. 2006) (explaining the history of the law enforcement exception to the ADEA).

Congress once again amended the ADEA in 1996 to re-enact the law enforcement exception. This amendment was made retroactive to 1993, and it contained no sunset provision. The law enforcement exception is now defined as follows:

> It shall not be unlawful for an employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or a political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken–
>
> (1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained--
>
> (A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; or
>
> (B) (i) if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996; or
>
> (ii) if applicable State or local law was enacted after September 30, 1996, and the individual was discharged, the higher of–
>
> (I) the age of retirement in effect on the date of such discharge under such law; and
>
> (II) age 55; and

> (2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

29 U.S.C. § 623(j). Thus, to come within the "safe harbor" of the law enforcement exception, an age-based refusal to hire must: (i) be based upon a mandatory age requirement contained in state or local law enacted before March 3, 1983, or after September 30, 1996; and, (ii) be pursuant to a *bona fide* hiring or retirement plan that is not a subterfuge to evade the substantive provisions of the ADEA. *See Kopec v. City of Elmhurst*, 193 F.3d 894, 902 (7th Cir. 1999).

The Court finds that the refusals to hire the Plaintiff by the City of McAlester and the City of Krebs *do* fall within the law enforcement exception to the ADEA. First, both decisions were based upon "State law or local law" in effect on March 3, 1983, *i. e.*, the statutory regime governing the OPPRS, which was first enacted in 1969. *See* 11 Okla. Stat § 541x (1969). Although under such law the maximum hiring age has changed since 1983, the Plaintiff was not prejudiced thereby because the law is less restrictive, *i. e.*, the maximum hiring age has gone from thirty-five to forty-five. *See, e.g., Bouras v. Town of Danvers*, 11 F. Supp. 2d 159, 163 (D. Mass. 1998) ("As the 'Rule of Construction' makes clear, the drafters of the exemption were not concerned with changes in state law that placed law enforcement officers in a better position with respect to mandatory retirement, only with changes that made things worse.") [footnote omitted]. The Plaintiff does not dispute that the City of McAlester meets this first requirement, as it has been participating in the OPPRS since 1981. The Plaintiff does, however, contend that the City of Krebs cannot meet it.

The Plaintiff argues that the City of Krebs cannot have acted pursuant to "State or local law" in effect on March 3, 1983, because it did not participate in the OPPRS until October, 2004. It is certainly true that the City of Krebs did not begin participating in the OPPRS until it was required to do so, *i. e.*, when it hired a third full-time police officer in October, 2004. *See* 11 Okla. Stat. § 50-112(E) ("Notwithstanding any other provision of law to the contrary, a municipality that employs two (2) or fewer full-time police officers may employ a police officer who is more than forty-five (45) years of age and who has never participated in the Oklahoma Police Pension and Retirement System, but such police officer shall not be eligible to participate in the System.").[4] However, the law requiring participation in the OPPRS clearly applied to the City of Krebs (and to every other municipality in the State of Oklahoma) even though it was not actually participating. *See* 11 Okla. Stat. § 50-101(15) ("'Eligible employer' means any municipality with a municipal police department[.]"). In any event, once the City of Krebs hired a third police officer, it was *required by law* to enforce the mandatory maximum hiring age imposed by the OPPRS. *See* 11 Okla. Stat. § 50-112(A) ("All persons employed as full-time duly appointed or elected officers . . . *shall* participate in the System . . . Except as otherwise provided in this section,

---

[4] The Plaintiff argues that this exception, and the one for chiefs of police, *see* 11 Okla. Stat. § 50-112(B), provide greater protections for younger workers. But the Plaintiff lacks standing to advance such a claim, as neither of these exceptions to participation in the OPPRS apply to him. *See, e. g., Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973) ("[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."). The same can be said about the Plaintiff's challenge to the OPPRS as an employment benefit or retirement plan under 29 U.S.C. § 623(f)(2)(B); he has no standing to raise any invalidity because he has not been harmed thereby.

*a police officer shall be not less than twenty-one (21) nor more than forty-five (45) years of age* when accepted for membership in the System.") [emphasis added]. For the City of Krebs, as for the City of McAlester, the "State or local law" referred to in 29 U.S.C. § 623(j)(1)(A) is Section 50-112, which contains a mandatory maximum hiring age that was in effect (albeit in a more restrictive form) on March 3, 1983. *See Kopec,* 193 F.3d at 900 ("Section 623 (j)(1)(A) focuses on the state of local law on March 3, 1983, not at the time the challenged hiring decision was made."). Thus, the City of Krebs falls within the first requirement of the law enforcement exception to the ADEA, even though (i) it was not participating in the OPPRS on March 3, 1983, and (ii) it did not begin participating in the OPPRS until October, 2004.[5]

The Plaintiff also argues that the City of Krebs refused to hire him before it actually joined the OPPRS and became subject to the mandatory maximum hiring age, *i. e.*, the Plaintiff contends he was told he was too old when he first applied for employment with the City of Krebs in July, 2004. As evidence of this, the Plaintiff cites transcripts of his taped

---

[5] The authorities cited by the Plaintiff in support of his argument that the City of Krebs cannot meet Section 623(j)(1)(A) are clearly inapposite. *See Roche v. City of Chicago*, 24 F.3d 882 (7th Cir. 1994); *Gately v. Massachusetts*, 2 F.3d 1221 (1st Cir. 1993); *EEOC v. New York*, 846 F. Supp. 306 (S.D. N.Y. 1994). Both *Roche* and *EEOC v. New York* involved state or local law *not in effect* on March 3, 1983, and although in *Gately* there was applicable state law *in effect* on March 3, 1983, it had been amended thereafter to be more restrictive. Thus, none of these cases support the idea that the City of Krebs did not act pursuant to "State or local law" in effect on March 3, 1983, because it did not participate in the OPPRS until October, 2004. But even if they did, the City of Krebs nevertheless could be found to have acted pursuant to "local law enacted after September 30, 1996" under 29 U.S.C. § 623(j)(1)(B)(i) because of its ordinance or resolution joining the OPPRS in 2004. *See* 11 Okla. Stat. § 50-106.3(A) ("Application for affiliation shall be in the form of a resolution approved by the governing body of the eligible employer or by any other body or officer authorized by law or recognized by the State Board to approve such resolution or action.").

conversations (one on the phone and one in person) with the City of Krebs' police chief. But these transcripts make clear that the conversations took place *after* the City of Krebs was already participating in the OPPRS, *i. e.*, after October, 2004, not in July of that year as the Plaintiff contends. For example, the telephone conversation refers to the inability to hire the Plaintiff because the City of Krebs was already filling out its complement of five officers by adding two new ones, but the Plaintiff would be "too old to get on anyway." *See* Docket No. 37, Ex. 5, pp. 6-7 [first transcript]. The in-person conversation likewise refers to the inability to hire the Plaintiff because he was too old to participate in the "state retirement," even if the Plaintiff already had a retirement plan or was hired part-time. *See* Docket No. 37, Ex. 5, pp. 6-7, 17 [second transcript]. Further, the in-person conversation refers to the fact that the police department would be expanding in July, *see* Docket No. 37, Ex. 5, at 17 [second transcript], which apparently corresponds to the July date referred to in the telephone conversation, *see* Docket No. 37, Ex. 5, p. 3 [first transcript], and that "tomorrow night's New Year's Eve." *See* Docket No. 37, Ex. 5, at 10 [second transcript]. The clear import of this evidence is that both conversations occurred *after* the City of Krebs had three full-time officers and began participating in the OPPRS. Absent any controverting evidence, *e. g.*, an affidavit from the Plaintiff as to when the conversations occurred, it is therefore undisputed that the Plaintiff was not refused employment based on his age prior to the City of Krebs' participation in the OPPRS.

Second, it is clear that in basing their hiring decisions on the OPPRS, both the City of McAlester and the City of Krebs acted pursuant to a bona fide hiring or retirement plan

that is not a subterfuge to evade the substantive provisions of the ADEA. *See* 29 U.S.C. § 623(j)(2). As a threshold matter, the Court finds that the OPPRS *is* a bona fide hiring or retirement plan; it is enshrined in statute, it has been recognized by the Internal Revenue Service as a bona fide retirement plan, and it pays benefits to its members. The OPPRS is therefore a plan which "is genuine and pursuant to which actual hiring decisions are made." *Feldman*, 434 F.3d at 182, *quoting Kopec*, 193 F.3d at 901. *Cf. Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 166 (1989) (noting that employee benefit plan under 29 U.S.C. § 623(f)(2) is bona fide to the extent it exists and pays benefits). The Plaintiff does not seriously dispute this, but he does contend that the mandatory maximum hiring age is not a bona fide occupational qualification ("BFOQ") for the police work because it is not "reasonably necessary" to perform the duties of the job. *See* 29 U.S.C. § 623(f)(1). However, this is irrelevant, as the law enforcement exception obviates the need to justify the maximum hiring age as a BFOQ. *See Feldman*, 434 F.3d at 182 n. 5 ("Section [623](j) by its terms relieves law enforcement agencies of having to establish that age is a BFOQ in order to discriminate on the basis of age. The only required showing of bona fides under section [623](j) relates to the hiring plan itself and not whether age amounts to a proper qualification for the job."), *citing Kopec*, 193 F.3d at 902 ("Indeed, it would make no sense at all for Congress to have required a BFOQ showing. That requirement is already found in section 623(f)(1); thus, any employer covered by the ADEA can continue to use age as a hiring criterion so long as it is 'reasonably necessary' to the operation of its business. Section 623(j) would therefore accomplish nothing if the exemption from the ADEA were

conditioned upon a BFOQ showing; and we are loathe to adopt constructions that render a statutory provision superfluous."). *See also Knight v. State of Georgia*, 992 F.2d 1541, 1547 (11th Cir. 1993) (noting that the firefighter/law enforcement officer exemption has "no requirement that the employer establish that age is a BFOQ."); *Correa-Ruiz v. Calderon-Serra*, 411 F. Supp. 2d 41, 49 (D. P.R. 2005) ("Plaintiff's reference to Section 623(f)(1) is misguided. Co-defendants' motion to dismiss is predicated on Section 623(j)(1), which specifically applies to law enforcement and firefighting officials. Pursuant to Section 623(j)(1), Defendants had no need to identify a bona fide occupational qualification prior to enforcing a mandatory retirement age.").

The Plaintiff also argues that the purpose of participation in the OPPRS is to evade the substantive provisions of the ADEA, *i. e.*, that it is a subterfuge. Indeed, the overall thrust of the Plaintiff's argument seems to be that the OPPRS *must be* a subterfuge to evade the ADEA because it requires cities to discriminate on the basis of age and results in actual age discrimination. But this "disparate impact" argument is simply beside the point, *i. e.*, the City of McAlester and the City of Krebs clearly *may* discriminate on the basis of age if their hiring decisions fall within the law enforcement exception. *See Feldman*, 434 F.3d at 184 ("The law enforcement exception, which allows for the setting of age limits, expressly contemplates discrimination on the basis of age. Accordingly, despite plaintiff's contention to the contrary, showing that [a plan] discriminates on the basis of age rather than ability cannot be enough to make section [623](j) inapplicable. Were we to conclude otherwise, we would render section [623](j) a dead letter.") [internal citations and quotations omitted].

The Plaintiff's specific subterfuge arguments fare no better. Initially, the Plaintiff contends that the OPPRS (or participation in it by the City of McAlester and the City of Krebs, at least) is subterfuge for violating Section 623(f)(2) of the ADEA, which pertains, *inter alia*, to employee benefit plans. But Section 623(f)(2) is not a substantive provision of the ADEA; like the law enforcement exception, it is an *exemption from* the substantive requirements of the ADEA. *See Bell v. Purdue University*, 975 F.2d 422, 428 (7th Cir. 1992) (evaluating whether a benefits plan under § 623(f)(2) is a subterfuge to evade a substantive provision of the ADEA and noting that the substantive provisions "include the ADEA's ban on age-based discrimination with respect to 'compensation, terms, conditions, or privileges of employment' and age-based discrimination that 'would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee.'"), *quoting* 29 U.S.C. § 623(a)(1) & (2). Further, these two exceptions are separate and distinct; Section 623(f)(2) "exempt[s] the provisions of a bona fide benefit plan from the purview of the ADEA so long as the plan is not a method of discriminating in other, non-fringe-benefit aspects of the employment relationship," *see Drnek v. City of Chicago*, 205 F. Supp. 2d 894, 897 (N.D. Ill. 2002), *quoting Betts*, 492 U.S. at 177, while section 623(j) is a public safety exemption to the ADEA, exempting state and local governments with age-based hiring restrictions for firefighters and police officers. *See Petrelli v. City of Mount Vernon*, 9 F.3d 250, 253 (2d Cir. 1993); *Kopec*, 193 F.3d at 897. The Defendants need not satisfy the provisions of both to claim the safe harbor of either one. *See, e.g., Erie County Retirees Association v. County of Erie, Pa.*, 220 F.3d 193, 214 (3d Cir. 2000), *cert.*

*denied*, 532 U.S. 913 (2001) ("Congress knew how to craft exceptions to the ADEA, as there are several explicitly worded safe harbors in 29 U.S.C. § 623.").

The Plaintiff also contends that the OPPRS is subterfuge for age discrimination because its maximum hiring age is based on financial considerations rather than concern for public safety. The Plaintiff offers no proof of this, either as to the enactment of the OPPRS by the Intervenor State of Oklahoma or as to the participation in OPPRS by the City of McAlester and the City of Krebs. But such motives would not invalidate the OPPRS under the ADEA. *See Feldman*, 434 F.3d at 184 ("We decline to hold that a state legislature contravenes a substantive provision of the ADEA simply by taking fiscal considerations into account when instituting an age limit for new police officers. If we were to so hold, we would subvert section [623](j), as it is difficult to imagine a circumstance in which a legislature would not at least consider the fiscal implications of such a policy - indeed, it is difficult to imagine any legislation on social or labor concerns that is wholly divorced from budgetary or fiscal considerations."); *Minch*, 363 F.3d at 629 ("The statute does not condition the validity of such retirement programs on proof that the public employer had adopted the program genuinely believing that it is justified in the interest of public safety . . . [T]he defendants cannot be liable for their motives if their conduct has not evaded the ADEA's prohibitions, . . . and doing something that the statute expressly permits does not evade its prohibitions.") [citations and quotations omitted]. Further, as the State of Oklahoma, the City of McAlester and the City of Krebs point out, inclusion of a maximum hiring age in the OPPRS cannot be a subterfuge because it pre-dated the application of the ADEA to states

and local governments. *See Kopec*, 193 F.3d at 901 ("To the extent that a hiring plan includes a maximum age of hire, what little case law there is on the subject suggests that the plan will not be considered a 'subterfuge to evade the purposes of [the] Act' so long as the age criterion pre-dates the ADEA (or its extension to the employees of state and local governments)"), *citing Knight*, 992 F.2d at 1547; *Betts*, 492 U.S. at 168. *But see Breitigan*, 350 F. Supp. 2d at 577-78 (rejecting *per se* rule that plans predating the ADEA cannot be challenged as subterfuges). And it is irrelevant that the initial maximum hiring age of thirty-five, *see* 11 Okla. Stat § 541x (1969), was later increased to forty-five. *See Knight*, 99 F.2d at 1547 ("[A] post-ADEA modification to a pre-ADEA plan that does not increase the age-based disparities contained in the preexisting plan is also shielded from being challenged as a subterfuge.").

In summary, the Court concludes there is no dispute that both the City of McAlester and the City of Krebs refused to hire the Plaintiff based on the mandate of the OPPRS, which was in effect on March 3, 1983, and which is a bona fide hiring or retirement plan that is not a subterfuge to avoid the substantive provisions of the ADEA. Accordingly, the City of McAlester and the City of Krebs are entitled to summary judgment on the Plaintiff's claims under the ADEA.

The City of McAlester also moved for summary judgment on the Plaintiff's state law claim for intentional infliction of severe emotional distress. *See* Docket No. 94. The Plaintiff did not respond and apparently concedes this motion. But it is clear in any event that the City of McAlester is entitled to summary judgment. In order to prevail on the so-

called "tort of outrage," the Plaintiff must show extreme and outrageous conduct on the part of the City of McAlester. *See Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387-88 (10th Cir. 1991) (applying Oklahoma law). Whether or not the City of McAlester's conduct is sufficiently extreme and outrageous to give rise to such a claim is a question of law for the Court. *See Eddy v. Brown,* 1986 OK 3, ¶ 6, 715 P.2d 74, 76-77 ("It is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous . . . Only when it is found that reasonable men would differ in an assessment of this critical issue may the tort-of-outrage claim be submitted to a jury.") [footnote and citation omitted]. The Court finds here that the City of McAlester's refusal to hire the Plaintiff because of his age was not sufficiently extreme and outrageous to support a claim for intentional infliction of severe emotional distress.[6]

Assuming *arguendo* the Plaintiff *could* make out a claim for unlawful age discrimination against the City of McAlester, that alone would be insufficient to support a claim for intentional infliction of severe emotional distress. *See Grandchamp v. United Air*

---

[6] In any event, it is doubtful the Plaintiff can legally maintain a claim for intentional infliction of severe emotional distress against the City of McAlester under the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. § 151 - § 200 (the "GTCA"). The GTCA waives the sovereign immunity of the State of Oklahoma and its political subdivisions only to the extent that an employee acts within the scope of employment. *See* 51 Okla. Stat. § 153. To act within the scope of employment, an employee must act in good faith. *See* 51 Okla. Stat. § 152(9) ("'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment[.]"). Further, "[t]here is no way to prove a claim for outrage if the defendant has acted in good faith." *McMullen v. City of Del City,* 1996 OK CIV APP 46, ¶ 7, 920 P.2d 528, 531. Thus, the City of McAlester could not be held liable under the GTCA for any intentional infliction of severe emotional distress by one of its employees. *See id.* at ¶¶ 5-9, 920 P.2d at 530-31 (determining that the district court properly granted summary judgment to the municipal defendant on a claim for intentional infliction of severe emotional distress).

*Lines, Inc.*, 854 F.2d 381, 386 (10th Cir. 1988) (applying Colorado law and determining "that a bare age discrimination claim will not support a claim for the intentional infliction of emotional distress."). *A fortiori*, since there was no unlawful discrimination, the City of McAlester's refusal to hire Plaintiff cannot by itself support such a claim. Nor is there any other evidence to suggest extreme and outrageous conduct on the part of the City of McAlester; for example, the Plaintiff admitted in his deposition that he was not treated in an angry, impolite, or rude way when he was told he could not be hired. Inasmuch as the City of McAlester did what it was legally entitled to do, and by the Plaintiff's account in an inoffensive manner, the Court finds that the City of McAlester's conduct is insufficient as a matter of law to support a claim for intentional infliction of severe emotional distress.

The Plaintiff also asserted an intentional infliction claim against the City of Krebs. Although the City of Krebs has not sought summary judgment on this claim, the general rule is that "district courts are widely acknowledged to possess the power to enter summary judgments, *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence." *Graham v. City of Oklahoma City,* 859 F.2d 142, 144 (10th Cir. 1988) [quotation omitted]. The City of McAlester's motion put the Plaintiff on notice that any intentional infliction claim premised upon age discrimination was in jeopardy, but in any event it is clear that the Plaintiff cannot maintain such a claim against the City of Krebs for the same reasons that he cannot maintain one against the City of McAlester. *See Ward v. Utah,* 398 F.3d 1239, 1245-46 (10th Cir. 2005) ("If a losing party was not prejudiced by the lack of notice, we will not reverse simply because the grant of summary judgment came *sua*

*sponte*."). The Court therefore finds that the City of Krebs is entitled to summary judgment on the Plaintiff's claim for intentional infliction of severe emotional distress notwithstanding its failure to ask for such relief.

### III. Conclusion

In summary, the Court finds that the City of McAlester and the City of Krebs are entitled to summary judgment on the Plaintiff's federal ADEA claims and on his state law claims for intentional infliction of severe emotional distress. Accordingly, IT IS HEREBY ORDERED: (i) that the Plaintiff's Motion for Partial Summary Judgment Against Defendants City of Krebs and City of McAlester [Docket No. 37] is DENIED; (ii) that the Defendant City of McAlester's Cross-Motion for Partial Summary Judgment and Brief in Support [Docket No. 51] is GRANTED; (iii) that the Defendant City of Krebs' Cross-Motion for Summary Judgment and Brief in Support [Docket No. 54] is GRANTED; and, (iv) that the Defendant City of McAlester's Second Motion for Partial Summary Judgment and Brief in Support [Docket No. 94] is GRANTED.

**IT IS SO ORDERED** this 29th day of November, 2006.

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**